UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| NOLAN C. DARBY, *et al.*, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | |
| | ) | 3:16-CV-138 |
| v. | ) | |
| | ) | Collier/Shirley |
| PILOT CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| KEVIN THOMPSON, *et al.*, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | |
| | ) | 3:16-CV-143 |
| v. | ) | |
| | ) | Collier/Shirley |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **M E M O R A N D U M**

Before the Court are motions to dismiss Plaintiffs' complaints in each of the above-captioned actions. (Doc. 25 in Case No. 3:16-cv-138 (the "Darby/Pilot Action"); Doc. 24 in Case No. 3:16-cv-143 (the "Thompson/Love's Action").) Defendants, Pilot Corporation and Pilot Travel Centers, LLC doing business as Pilot Flying J (collectively, "Pilot") in the Darby/Pilot Action, and Love's Travel Stops & Country Stores, Inc. ("Love's") in the Thompson/Love's Action, seek dismissal of the complaints against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs lack standing.[1]

---

[1] In the alternative, Defendants move to dismiss the complaints under Rule 12(b)(6) on the grounds that Plaintiffs fail to state claims upon which relief can be granted. Because the Court concludes Plaintiffs lack standing to bring these actions, the Court does not address Defendants' alternative arguments under Rule 12(b)(6).

Plaintiffs, Nolan Darby, Dorene Ivy, Laurie Anderson, and Chase Mosely[2] in the Darby/Pilot Action, and Kevin Thompson in the Thompson/Love's Action, responded in opposition to the motions to dismiss. (Darby/Pilot Doc. 29; Thompson/Love's Doc. 32.) Plaintiffs replied. (Darby/Pilot Doc. 30; Thompson/Love's Doc. 37.) The Court held a hearing on the motions on May 23, 2017. (Darby/Pilot Doc. 47; Thompson/Love's Doc. 45.) Plaintiffs filed notices of supplemental authority on May 24, 2017. (Darby/Pilot Doc. 46; Thompson/Love's Doc. 44.) Defendants responded on May 30, 2017. (Darby/Pilot Doc. 49; Thompson/Love's Doc. 47.) For the following reasons, the Court will **GRANT** Defendant's motions (Darby/Pilot Doc. 25; Thompson/Love's Doc. 24) and **DISMISS** these actions **WITH PREJUDICE**.

I. **BACKGROUND**

These putative class actions address the size and length of the holds placed on Plaintiffs' credit-card accounts when Plaintiffs used their cards to buy gasoline through pay-at-the-pump devices at gas stations owned by one of the Defendants.[3] In each such transaction, the Defendant seller first makes an authorization charge, usually for one dollar, to make sure the card is valid. This initial authorization charge is almost immediately removed from the customer's account. The Defendant then places a preauthorization hold on the customer's credit line in a pre-determined amount allegedly designed to cover the maximum cost of a fill-up. The amounts of the preauthorization holds placed by Pilot range from $75 to $100 for passenger vehicles. The holds placed by Love's are typically $125 for passenger vehicles.

---

[2] Plaintiff Mosely is identified as "Chase Mosely" in the case caption and parts of the Complaint and as "Chad Mosely" in other parts of the Complaint. (Doc. 23 in Case No. 3:16-cv-139.)

[3] To the extent there are any variations in the parties' statements of the facts, the Court interprets the facts in the light most favorable to Plaintiff. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Neither Pilot nor Love's notifies its customers of the use, size, or duration of any credit hold it may employ. Preauthorization holds are not used if a customer goes inside a store to pay for a gas purchase with a credit card. Holds also do not apply to debit-card purchases or, of course, to cash purchases.

A preauthorization hold generally remains on a customer's account for several days. The issuer of the customer's credit card determines how long the pre-authorization hold stays on the account.

Plaintiffs used their credit cards to buy gasoline through pay-at-the-pump devices on the following occasions:

| Plaintiff | Location | Date | Card | Purchase | Defendant |
|---|---|---|---|---|---|
| Darby | Ellenton, Fla. | 2/13/16 | Visa | $23.04 | Pilot |
| Ivy | Ocala, Fla. | 4/9/13 | Am. Ex. | $24.00 | Pilot |
| Anderson | Sevier or Jefferson Cty., Tenn. | 2/26/16 | Visa | $23.58 | Pilot |
| Mosely | Sevier Cty., Tenn. | 2/25/16 | Am. Ex. | $47.99 | Pilot |
| Thompson | Loudon Cty., Tenn. | 2/18/16 | Visa | $14.75 | Love's |

(Darby/Pilot Doc. 23 ("Darby Compl.") ¶¶ 11, 13, 15, 17, 52; Thompson/Love's Doc. 22 ("Thompson Compl.") ¶ 11.)

Plaintiff Thompson is the only one of the Plaintiffs who actually saw a hold on his account after he made a purchase. He saw the hold when he checked his account the morning after he bought gas from Love's. (Thompson Compl. ¶ 12.) He talked to the manager of the Love's store, who told him they "don't do that" and "we don't own the machines." (*Id.*) The hold was in the amount of $125.00, which was more than eight times the amount of his $14.75 purchase. The hold lasted for seventy-two hours.

Each Complaint includes a section titled "Plaintiffs' Injuries-in-Fact and Damages." (Darby Compl. ¶¶ 70–74; Thompson Compl. ¶¶ 39-43.) Plaintiffs acknowledge they have not

alleged they were "deprived . . . of basic needs, insufficient funds to cover expenses, or overdraft charges," but claim it is probable other, unnamed class members have suffered such deprivations. (Darby Compl. ¶ 70; Thompson Compl. ¶ 39.) Plaintiffs nevertheless say they "allege much more than a temporary diminution in their available credit. They have suffered a demonstrable loss of credit . . . . This loss of credit resulted in actual harm. Thus, they suffered concrete and tangible injuries and real-world harm . . . ." (Darby Compl. ¶ 71; *see also* Thompson Compl. ¶ 40.) Plaintiffs assert they have consulted an economist, who would testify their damages "reflect the opportunity cost of the credit card holds placed in excess of the actual purchases made," which they also describe as denied spending power. (Darby Compl. ¶ 72; Thompson Compl. ¶ 41.) The economist can calculate Plaintiffs' damages using the average duration of the holds and the average interest factor. (*Id.*)

The Complaints also allege the preauthorization holds "affected the prices of the fuel purchased by Plaintiffs . . . by unilaterally increasing the consideration required to make the purchases." (Darby Compl. ¶ 33; *see also* Thompson Compl. ¶ 30.) Plaintiffs say they would not have bought fuel at the pay-at-the-pump machines if they had known that holds substantially exceeding the price of the fuel would be imposed. (*Id.*)

Plaintiffs in the Darby/Pilot Action assert six causes of action against Pilot: breach of implied-in-fact contract, breach of implied-in-law contract/unjust enrichment; violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq.*; violation of the Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*; violation of other states' unfair or deceptive trade practices acts; and fraudulent concealment.[4] (Darby Compl.

---

[4] Plaintiff Ivy asserted a violation of the Georgia Fair Business Practices Act, O.C.G.A. §§ 10-1-390 *et seq.* Plaintiffs consent to dismiss this claim. (Darby/Pilot Doc. 29 at 1 n.2.).

4

¶¶ 94–158.) Plaintiff Thompson asserts the same causes of action against Love's, omitting only the claim specific to Florida. (Thompson Compl. ¶¶ 63–108.)

## II. STANDARD OF REVIEW

When a defendant moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction. *Davis v. United States*, 499 F.3d 590, 593–94 (6th Cir. 2007). A Rule 12(b)(1) motion may present either a facial attack, which questions the sufficiency of the pleadings, or a factual attack, which challenges the factual existence of subject-matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The parties agree these motions raise facial attacks. (Darby/Pilot Doc. 27 at 3, Doc. 29 at 11; Thompson/Love's Doc. 25 at 4, Doc. 32 at 7.) "When reviewing a facial attack, a district court takes the allegations in the complaint as true," though conclusory allegations and legal conclusions will not prevent dismissal. *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007).

## III. DISCUSSION

For a plaintiff to have standing under Article III of the Constitution, there must be (1) an injury in fact; (2) a causal link between the injury and the defendant's action or inaction; and (3) a likelihood that a decision in the plaintiff's favor will redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). The plaintiff has the burden of establishing each of these elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

The type of evidence required to satisfy plaintiff's burden to establish subject-matter jurisdiction varies depending on the stage of the litigation. *Lujan*, 504 U.S. at 561. "At the

pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of jurisdiction. *Spokeo*, 136 S. Ct. at 1547.

Plaintiffs have failed to allege sufficient facts to demonstrate any of the requirements for standing is present, let alone all three. The Court examines each requirement in turn.

### A. Injury in Fact

An injury in fact must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way," while a concrete injury is one that is "real" rather than "abstract"—in other words, it "must actually exist." *Spokeo*, 136 S. Ct. at 1548. An injury must be both concrete and particularized to confer standing on a plaintiff; one without the other is not enough. *See id.*; *see also Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581–82 (6th Cir. 2016).

An injury in fact does not have to be "tangible," however. *Id.* at 1549. When assessing an intangible harm, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* In addition, a "risk of real harm" may "satisfy the requirement of concreteness." *Id.*

Defendants argue Plaintiffs have failed to allege any facts showing a concrete, tangible injury. Defendants argue Plaintiffs instead offer conclusory allegations and circular arguments on this point. Plaintiffs make the following allegations of injuries in their Complaints:

- "The excessive holds, in effect, resulted in losses of credit, depriving Plaintiff[s] and Class members of access to their otherwise available credit funds for several days. They proximately caused Plaintiff[s] . . . to suffer demonstrable, ascertainable, and measurable damages, *i.e.*, not merely losses of credit, but tangible, pecuniary, and actual harm, as their available credit disappeared for several days. These damages reflect the opportunity cost of the credit card holds placed in excess of the actual purchases made.

6

> That is, the difference between the amount of the credit card hold placed and the actual purchase *represents spending power denied to Plaintiff[s] . . . by Pilot*." (Darby Compl. ¶ 5; Thompson Compl. ¶ 5 (emphasis in originals).)

- Each named Plaintiff "was injured, suffering a tangible and pecuniary loss of opportunity and spending power that prevented [him or her] from having the use of such credit for several days." (Darby Compl. ¶¶ 11, 13, 15, 17; Thompson Compl. ¶ 13.)

- Each named Plaintiff "suffered a demonstrable loss of credit, as a portion of [his or her] . . . credit line disappeared, artificially and inexplicably frozen for several days. . . . This loss of credit further resulted in tangible, pecuniary, and actual harm to [each named Plaintiff]. [Each named Plaintiff] was damaged by not having access to [his or her] otherwise available credit card funds in the amount of the hold for the duration of the hold, causing a tangible and pecuniary loss of opportunity and spending power." (Darby Compl. ¶¶ 41–42, 50–51, 59–60, 68–69; *see also* Thompson Compl. ¶ 38.)

- Plaintiffs say they "allege much more than a temporary diminution in their available credit. They have suffered a demonstrable loss of credit . . . . This loss of credit resulted in actual harm. Thus, they suffered concrete and tangible injuries and real-world harm . . . ." (Darby Compl. ¶ 71; *see also* Thompson Compl. ¶ 40.)

As demonstrated by the excerpts above, Defendants are correct that Plaintiffs have failed to allege any facts showing a concrete injury. Plaintiffs acknowledged during oral argument that they are alleging an economic harm, rather than a personal, reputational, or emotional injury. Their complaints allege they lost "spending power" and the "opportunity cost" of lost credit to demonstrate they have suffered a concrete injury. These allegations are "merely a description of the effect of lost credit," however, not a description of a concrete and tangible injury. (*See* Darby/Pilot Doc. 27 at 6.) Plaintiffs have not, for example, alleged the holds stopped them from making purchases, put them over their credit limits, or even that they had credit limits. Repeatedly calling an alleged injury "concrete" and "tangible" does not make it so.

Further, the inability to make hypothetical purchases is not enough to constitute an injury in fact. *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *6 (N.D. Ill. Sep. 3, 2013). In *Barnes & Noble*, one of the plaintiffs was without the use of a credit card while the card was being replaced due to a fraudulent charge. The district court held plaintiff's time without her credit card was not an actual injury. Plaintiffs here attempt to distinguish *Barnes & Noble* on its facts, first in that it involved a data breach rather than a credit hold, and second in that there was only the possibility data had been stolen, rather than an "actual[] seiz[ure]" of Plaintiffs' credit for several days as in this case. The relevant holding of *Barnes & Noble*, however, is directly on point here and the Court finds it persuasive. Losing spending power for a period of time, without more, does not constitute an injury sufficient to confer standing.[5]

In their notice of supplemental authority, Plaintiffs analogize their alleged injury to the injury in junk-fax cases, in which merely having an unsolicited fax transmission occupy the recipient's telephone or fax line for a short period of time can be a concrete injury sufficient to convey standing. (Darby/Pilot Doc. 46; Thompson/Love's Doc. 44 (both quoting *Compressor Eng'g Corp. v. Thomas*, No. 10-10059, 2016 WL 7473448, at *9–10 (E.D. Mich. Dec. 29, 2016)).) Here, Plaintiffs argue, an excessive and unconsented-to hold occupied their credit in the same way. But the analogy will not hold. Occupation of a fax line necessarily excludes any other transmissions that may be attempted at the same time. There is no allegation here that the credit holds excluded any other financial transactions from occurring. Moreover, Congress has

---

[5] Plaintiffs cite Justice Thomas's *Spokeo* concurrence for the proposition that concrete-harm requirements are less rigorous where a plaintiff is seeking to vindicate his own rights, as opposed to rights owed to the public in general. (Darby/Pilot Doc. 29 at 12 (quoting *Spokeo*, 136 S. Ct. at 1552 (Thomas, J., concurring)).) Plaintiffs still do not explain what is concrete about the harm they suffered, however. Moreover, Justice Thomas's non-precedential statements discussed injury in the context of constitutional rights.

created a statutory right to be free from unsolicited fax advertisements. *See Compressor Eng'g*, 2016 WL 7473448, at *10. "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578). Even if Plaintiffs had suffered concrete, *de facto* injuries, the reasoning of *Compressor Engineering* would still not be applicable to their cases, because Plaintiffs have not alleged the violation of any statutory right.

Plaintiffs argue they have suffered a second kind of damage: the credit holds gave Defendants valuable protection from fraud for which Defendants paid Plaintiffs nothing. Plaintiffs have not explained, however, how this benefit to Defendants injured Plaintiffs. When asked about this alleged harm at oral argument, Plaintiffs referred to the economist they have retained to calculate the time value of the holds. But the ability to develop a mathematical formula does not demonstrate either that an injury has been suffered or that the alleged injury is concrete.

Finally, Plaintiffs argue Defendants are inappropriately conflating the standards for establishing injury in fact at the pleading stage and for proving damages at trial, in that a plaintiff may be entitled only to nominal damages and still have standing. Defendants are not, however, attacking any failure by Plaintiffs to provide proof of their damages. Defendants are attacking Plaintiffs' failure to even allege facts demonstrating that they suffered concrete injuries. *See Spokeo*, 136 S. Ct. at 1547.

Plaintiffs have repeated the conclusion that they have suffered a concrete injury, but they have not alleged facts demonstrating they have done so. Plaintiffs therefore lack standing.

### B. Causal Connection

Love's argues any injury Plaintiff Thompson suffered was not fairly traceable to Love's, because the Complaint alleges Plaintiff Thompson's credit-card company determined the length of the hold. (Thompson/Love's Doc. 25 at 8 (citing Compl. ¶ 23).) Love's argues any injury resulted from the length of the hold, not its size. Plaintiff Thompson responds that proximate causation is not required to support standing; rather, an indirect injury may be sufficient. (Thompson/Love's Doc. 32 at 9–10 (citing *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 713 (6th Cir. 2015) (finding harm was fairly traceable to defendant where defendant motivated conduct, but did not require it)).) The purpose of the traceability requirement is to eliminate cases in which a third party caused an injury. (*Id.* (quoting *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 542 (6th Cir. 2004)).) Plaintiff Thompson has alleged that Love's imposed the hold and did not provide notice of the hold.

Plaintiffs have not alleged facts demonstrating their alleged injuries are fairly traceable to Defendants. The complaints allege Plaintiffs' credit-card companies determined the length of the holds. Defendants determined only the size of the holds. If anything caused harm in this scenario, however, it was the length of time the holds were in place. As Plaintiffs conceded during oral argument, the harm caused by holding a million dollars of credit for one second would be less than the harm caused by holding a hundred thousand dollars for ten days. Plaintiffs further conceded it is impossible to put a dollar value on the harm done by an instantaneous hold. But the complaints contain no allegations that Defendants controlled anything other than the size of the holds, which were placed before the Plaintiffs began to pump any gas into their vehicles.

Plaintiffs argue their expert can calculate the value of the injury done by holds of a second or longer, using a standard interest rate, the size of the excess amount of the hold, and the amount of time the hold lasted. But being able to calculate the harm allegedly done by the combination of the amount and length of the hold does not make up for the fact that the harm, if indeed there is any, resulted from the length decided by the credit-card company, not the amount decided by Defendants.[6] Plaintiffs' failure to allege an injury fairly traceable to the amount of the holds, rather than the length of the holds, is fatal to Plaintiffs' claim to have standing.

C. **Redressability**

Defendants argue Plaintiffs have failed to allege facts showing any injury could be redressed by a favorable ruling because the holds have already been removed. Plaintiff Thompson argues in response that he is seeking redress in the form of compensatory damages, so a judgment awarding him compensatory damages would redress his injuries. But identifying a remedy is not the same as redressability. If redressability required no more than a demand for money damages, redressability would exist in every case seeking money damages. Redressability turns on whether the injury the plaintiff suffered can be fixed by an order of the court. All of the holds were released before the lawsuits were filed. Plaintiffs therefore have not alleged facts demonstrating any injuries they may have suffered are redressable.

---

[6] Plaintiffs argue Defendants initiated the holds knowing they would last for days, and Defendants are therefore responsible for the harm caused by the holds. This argument is not supported by any of the factual allegations in the complaints, however.

## IV. CONCLUSION

Plaintiffs have not alleged facts demonstrating an injury in fact, a causal connection to Defendants, or redressability. For each of these reasons independently, Plaintiffs do not have standing. The Court will therefore **GRANT** Defendant's motions (Darby/Pilot Doc. 25; Thompson/Love's Doc. 24) and **DISMISS** these actions **WITH PREJUDICE**.

**An appropriate Order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**